■ In the Matter of 5421 SYLVAN AVENUE ASSOCIATES CORP., Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant. — Judgment, Supreme Court, New York County (David Saxe, J.), entered on February 17, 1983, affirmed on the opinion of David Saxe, J., at Special Term, without costs and without disbursements. Concur — Kupferman, J. P., Sullivan and Kassall JJ.

Sandler and Asch, JJ., dissent in a memorandum by Asch, J., as follows: The petitioner landlord herein is the owner of an apartment building at 5421 Sylvan Avenue containing 20 apartments. There is a parking area in the rear of the building containing 21 spaces. Six of these spaces are in an "open-air" area and the remaining 15 are under a building overhang. ¶ The New York City Fire Department posted a violation with respect to the sprinkler system located in the parking area. Instead of correcting the conditions leading to the violation, the landlord wrote to the tenants requesting that they not park in the building parking area and informing them that this area would be closed effective March 4, 1981. ¶ On April 28, 1981, eight of the tenants filed a complaint of decrease in building-wide services citing the closing of the parking area previously provided for the tenants' use. The tenants further asserted that a notice had been received from Con Edison, dated April 10, 1980, that the electricity in the common areas of the building would be turned off, since the owner had failed to pay the bills, unless payment of over $4,000 was received. A further notice had been received from the Department of Housing Preservation and Development, dated February 4, 1981, stating that the Office of Rent and Housing Maintenance had paid the public utility bills and directing the tenants to pay rent to that office. ¶ The respondent Board, on May 13, 1981, sent the landlord a written notice with the tenants' complaint, advising it of its right to file an answer with the Board. The notice further advised that failure to answer within 10 days would be considered a default and result in a determination based on the record before the Board, without the landlord's answer. The landlord failed to file an answer to the tenants' complaint (answer forms for the landlord's use had been included with the notice) within the 10-day period. In fact, the landlord did not respond in the ensuing two months and on July 17, 1981, the Board issued Order and Opinion No. 17,133 determining the tenants' complaint of decrease in building-wide services. The Board found, based upon the tenants' uncontroverted allegations and supporting documentation, that the fire department had issued a violation with respect to the sprinkler system located in the parking area and that the owner had closed the parking area to the tenants in March of 1981. The Board directed the landlord to restore services to the required level by correcting all

conditions necessary to remove violations and by restoring use of the parking area to the tenants. The order further directed the owner to complete and return an enclosed compliance statement within 10 days. ¶ On July 24, 1981, the landlord filed a compliance statement with the Board in which it alleged that it had not received notice of the tenants' complaint. It further alleged without any proof that it was not required to restore the use of the parking area to the tenants since parking was not a required service under the leases and that the leases did not contain provisions requiring the landlord to allow the tenants to use the parking area. The owner failed to supply any of the leases or other documentation to refute the evidence that use of the parking area was a service required to be provided under the Rent Stabilization Law and the Code of the Rent Stabilization Association of New York City, Inc. ¶ Thereafter, the landlord supplied a copy of a certificate of occupancy issued on March 2, 1973 for the subject building and a letter from the Borough Superintendent of the Department of Buildings which stated that plans for the building could not be located. Instead of supporting the landlord's contentions, the certificate of occupancy indicated that the premises included a 15-car garage and an additional open parking area for six cars. The certificate explicitly stated that the parking area and garage were primarily for the use of the tenants. ¶ The tenants submitted documentation on August 19, 1981, in rebuttal, consisting of two leases containing riders providing in both cases that the landlord would furnish "a designated parking space * * * in the rear open air parking area." In addition, the tenants also submitted an order of the New York City Civil Court directing the landlord to correct all violations listed in an Office of Code Enforcement Report of Violations attached to the court order. The report indicated that a violation was placed on the premises with respect to the parking area sprinkler system and the court order directed correction of this violation, *inter alia,* within two days of the service of the order and provided for a civil penalty of $25 per day from the end of the two-day period until the violation was corrected. ¶ On September 3, 1981, the Board voted unanimously to deny the landlord's request for reconsideration and on September 4 advised the parties that the request for reconsideration had been denied. ¶ Petitioner landlord then instituted this proceeding asserting that respondent had not given it proper notice and further that the respondent Conciliation and Appeals Board's (CAB) determination lacked a rational basis. Special Term granted the petition to the extent of remanding to the CAB for further proceedings, finding a lack of notice and failure to provide the landlord with an opportunity to controvert the tenants' complaint. ¶ The remand by Special Term was erroneous, as a matter of law, on the record before it. ¶ The common-law rule is that a letter properly stamped, addressed and mailed is presumed to have been delivered (*News Syndicate Co. v Gatti Paper Stock Corp.,* 256 NY 211). A mere allegation of nonreceipt is not sufficient to rebut this presumption of receipt (see *Trust & Guar. Co. v Barnhardt,* 270 NY 350). ¶ Additionally, the administrative record of the Board, routinely kept in the normal course of business, contains a copy of the notice letter, which plainly indicates that said notice was duly mailed to the landlord both at the address designated by it for service of all notices and to the landlord's attorney at his business office. The copy of the notice, being a part of the Board's normal business records, carries a presumption of regularity that the notice was duly mailed and not returned by the post office. Office practices followed in the regular course of business, showing that a notice has been mailed, give rise to a presumption of mailing (*Nassau Ins. Co. v Murray,* 46 NY2d 828). ¶ Irrespective of the landlord's claim of lack of notice, it is not entitled to have the Board order vacated since it failed to make any showing that it had a meritorious defense to the tenants' claim. It had ample opportunity to submit documentation, etc., which it availed itself of and which the Board considered before it

denied reconsideration of its order. The Board thus satisfied due process considerations not only by its service on the landlord at the address designated by it with the Rent Stabilization Association and service on the business address of the landlord's attorney, it also gave the landlord an opportunity to submit any evidence it wished upon reconsideration. In fact, the landlord requested that the matter be reopened and that its comments on the compliance form, dated July 21, 1981, be "deemed the answer of the owner." Obviously, the Board considered this "answer" by the landlord since it gave the tenants an opportunity to respond before finally denying reconsideration. ¶ The Board order is itself supported by ample evidence, including leases specifying that parking is a required service, statements of the eight complaining tenants that parking had been provided as a service, and the certificate of occupancy which provides that the 21 parking spaces on the premises are to be used primarily for the tenants. Instead of supplying evidence in support of its claims, the landlord claimed that the "open-air" six-space parking area was provided for tenants' use but the "covered" 15-space area was not intended for parking. This claim, however, is inconsistent with the certificate of occupancy, which clearly provides that all of the parking spaces are to be used primarily for the tenants. ¶ In addition, the attempt by the landlord to distinguish between the two areas is without merit. The 15-space "covered" area is not fully enclosed. In fact, it is not enclosed by any outside wall. This area is distinguishable from the six "open-air" area spaces only by a building overhang and supporting posts. It was obviously designed and built solely for parking and is not suitable for any other purpose. The photograph appended to the record before the Board clearly shows that both the "covered" and "uncovered" spaces can legitimately be called "open-air" spaces. The absence of any door or other barriers to keep out the elements renders the space unsuitable for storage. Also, the building contains 20 apartments and it makes little sense to provide, as the landlord maintains, only six parking spaces out of 21 for 20 tenants. ¶ In addition, the respondent landlord cannot seriously suggest that it chose a proper solution to the sprinkler violation imposed by the fire department by closing off the 15-space parking area to the tenants. This does not, *ipso facto,* correct the fire violation. The landlord failed to establish or even state that it corrected the defective sprinkler system or removed this dangerous violation. ¶ The landlord respondent has failed, therefore, to show a lack of notice and also failed to rebut the ample evidence in the record that the use of the parking area, covered and uncovered, is a required service under the Rent Stabilization Law. ¶ Accordingly, the judgment of the Supreme Court, New York County (D. Saxe, J.), entered February 17, 1983, granting the CPLR article 78 petition vacating the order of appellant New York City Conciliation and Appeals Board and remanding to the Board for further proceedings, should be reversed, and the petition dismissed, without costs.